UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DONALD NEAL SKILLMAN,

                              Plaintiff,              08-CV-6481

                         v.                    **DECISION**
                                               **and ORDER**
MICHAEL J. ASTRUE[1],
Commissioner of Social Security,

                              Defendant.

_____

## INTRODUCTION

Plaintiff Donald N. Skillman ("Plaintiff") brings this action
pursuant to Title XVI of the Social Security Act ("the Act"),
seeking review of a final decision of the Commissioner of Social
Security ("Commissioner"), denying his application for Social
Security Supplemental Security Income ("SSI") Benefits.
Specifically, Plaintiff alleges that the decision of the
Administrative Law Judge ("ALJ") James E. Dombeck finding him not
disabled was not based on substantial evidence when the record is
taken as a whole, and was based on error of law.

The Commissioner moves for judgment on the pleadings pursuant
to Fed. R. Civ. P. 12(c)("Rule 12(c)"), on grounds that the
Commissioner's decision is supported by substantial evidence in the
record, and is based on the application of correct legal standards.
Plaintiff opposes the Commissioner's motion, and cross-moves for

_____

[1] This case was transferred to the undersigned by the Honorable David G.
Larimer, United States District Court for the Western District of New York by
Order dated April 12, 2010.

summary judgment on the pleadings, asking the Court to reverse and/or remand the decision of the Commissioner.

For the reasons that are set forth below, I find that the Commissioner's decision was contrary to applicable legal standards and not supported by substantial evidence in the record as a whole. I hereby deny the Defendant's motion for judgment on the pleadings, grant the Plaintiff's motion for judgment on the pleadings and remand this claim to the Commissioner for further proceedings consistent with this decision.

<u>**BACKGROUND**</u>

Plaintiff Donald Skillman applied for Supplemental Security Income ("SSI") benefits on June 25, 2004, alleging disability due to severe pain in the right side of his body, restriction of motion, obstructive pulmonary problems, traumatic brain injury, and mental impairment Plaintiff's application was initially denied on January 21, 2005, and he subsequently filed a request for Hearing before an ALJ. ALJ James E. Dombeck issued a decision on January 24, 2007, in which he found the Plaintiff not disabled. That decision was appealed to the Appeals Council and on June 28, 2007, the case was remanded for further consideration of the Plaintiff's mental impairment and maximum residual function.

Thereafter, a hearing was held on March 12, 2008 before ALJ James Dombeck. Considering the case de novo, the ALJ, on April 25, 2008, again found that based on the Plaintiff's application for SSI he was not disabled and was capable of performing sedentary work.

(Tr. 23-25). The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied Plaintiff's request for review on August 28, 2008. Following the denial of review by the Appeals Council, Plaintiff timely filed the instant action.

In finding that the Plaintiff was not disabled within the meaning of the Act, the ALJ adhered to the Social Security Administration's five-step sequential evaluation analysis for evaluating applications for SSI. See 20 C.F.R. §§ 404.1520 and 416.920(a)(4)(i)-(v)(2009).[2] Under step one of that process, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since June 25, 2004, the application date (Tr. 23). At steps two and three, the ALJ found that although the Plaintiff had "severe" impairments due to "mild degenerative disc disease of the lumbar spine, arthritis of the right ankle borderline intellectual functioning, osteoporosis and bronchial asthma," these impairments were not severe enough to meet or medically equal one of the listed

---

[2] Pursuant to the five step analysis set forth in the regulations, the ALJ, when necessary will: (1) consider whether the claimant is currently engaged in substantial gainful activity; (2) consider whether the claimant has any severe impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities; (3) determine, based solely on medical evidence, whether the claimant has any impairment or impairments listed in Appendix 1 of the Social Security Regulations; (4) determine whether or not the claimant maintains the residual functional capacity to perform his past work; and (5) determine whether the claimant can perform other work. See id; Goldthrite v. Astrue, 535 F.Supp.2d 329, 332 (W.D.N.Y. 2008). When employing the five-step analysis, the Commissioner must consider four factors: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of the pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." See Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

impairments on 20 CFR Part 404, Subpart P, Appendix 1. Id. At step
four of the evaluation process, the ALJ concluded that the
plaintiff had no relevant work experience within the 15 year time
period, but that he retained the residual functional capacity to
perform limited sedentary work. (Tr. 26). In step five of the
analysis, the ALJ retained a vocational expert who testified that
based the a hypothetical person who "only having a tenth grade
education, presumably special, yet being able to perform past
relevant work at the skill level of six and seven [sic]," who is
now limited to sedentary jobs with  environmental restrictions,
there are jobs in that exist in significant number in the national
economy that the Plaintiff can perform. (Tr. 26-27, 408). Based on
this analysis, the ALJ concluded that the Plaintiff has not been
under a disability. (Tr. 27).

### DISCUSSION

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to
hear claims based on the denial of Social Security benefits.
Additionally, this section directs that when considering such a
claim, the court must accept the findings of fact made by the
Commissioner, provided that such findings are supported by
substantial evidence in the record. Substantial evidence is defined
as "such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion." Consolidated Edison Co. V. NLRB,
305 U.S. 197, 229 (1938). Section 405(g) thus limits this Court's

scope of review to two inquiries: (i) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (ii) whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhard, 335 F.3d 99, 105-106 (2d Cir. 2003); see also Wagner v. Secretary of Health & Human Serv., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

The District Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Plaintiff and the Commissioner both move for judgment on the pleadings pursuant to 42 U.S.C. 405(g) and Rule 12(c). Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). Section 405(g) provides that the District Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g)(2009).

A District Court should order payment of SSI benefits in cases where the record contains persuasive proof of disability and remand

for further evidence would serve no purpose. <u>See</u> <u>Carroll v.</u>
<u>Secretary of Health and Human Serv.</u>, 705 F.2d 638, 644 (2d Cir.
1981). The goal of this policy is "to shorten the often painfully
slow process by which disability determinations are made." <u>Id</u>.
Because this court finds that (1) the ALJ's decision was not
supported by substantial evidence and (2) the record contains
substantial evidence of disability such that further evidentiary
proceedings would serve no purpose, judgment on the pleadings is
granted for the Plaintiff.

## II. <u>The ALJ's decision to deny plaintiff benefits is not supported by substantial evidence and contains errors of law</u>.

### A. The ALJ failed to give proper weight to the opinion of Plaintiff's treating physician and to provide "good reasons" for the weight given.

Although "[a] treating physician's statement that the claimant
is disabled cannot itself be determinative,"[3] the regulations
specify that "a treating source's opinion on the issue(s) of the
nature and severity of [a claimant's] impairment(s) will be given
'controlling weight' if the opinion is 'well supported by medically
acceptable clinical and laboratory diagnostic techniques and is not
inconsistent with other substantial evidence in your case record.'"
<u>Green-Younger</u>, 335 F.3d 99, 106 (2d Cir. 2003)(citing 20 C.F.R.
404.1527(d)(2); <u>Shaw v. Chater</u>, 221 F.3d 126, 134 (2d Cir. 2000);
<u>Rosa v. Callahan</u>, 168 F.3d 72, 78-79 (2d Cir. 1999)). Where a
treating source's opinion is not given controlling weight, the

---

[3] Citing <u>Snell v Apfel</u>, 177 F.3d 128, 133 (2d Cir.).

Commissioner must apply the factors listed in 20 C.F.R. §404.1527(d)(2).[4] Then, "[a]fter considering the factors, the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" <u>Burgess v. Astrue</u>, 537 F.3d 117, 129 (2d Cir. 2008). Remand is appropriate where the ALJ fails to provide "'good reasons' for not crediting the opinion of a claimant's treating physician." <u>Id</u>. at 129-30 (citing <u>Snell</u>, 177 F.3d at 133(citing 20 C.F.R. §§404.1527(d)(2), 416.927(d)(2)).

The ALJ broadly stated that the treating physician's residual functional capacity report was "inconsistent with the record as a whole, nor event with his own longitudinal treatment notes, and is unsupported by objective evidence." (Tr. 25). However, the ALJ fails to articulate what weight is given to Dr. Kennedy's opinion and to adequately support his conclusion with "good reasons" that can be reasonably construed from the record.

The ALJ mischaracterizes the physician's medical reports in declaring them inconsistent with the "rather severe" limitations reported and unsupported by objective evidence. Dr. Kennedy's records include an x-ray indicating arthritic change of the lumbar spine and right ankle, slight scoliosis, and previous fusion of the ankle joint. (Tr. 64). The ALJ also fails to note the Plaintiff has

---

[4] In deciding whether to give the treating physician's opinion controlling weight the ALJ must consider the following factors: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors. <u>Schaal v. Apfel</u>, 134 F.3d 496, 503 (2d Cir. 1998) (citing 20 C.F.R. §§404.1527(d)(2), 416.927(d)(2)).

consistently complained of chronic pain, especially in his lower
back and right ankle since Dr. Kennedy began treating him in 2002.
(Tr. 150). Dr. Kennedy's reports are substantiated by the x-ray and
range of motion tests. (Tr. 144, 145). Further range of motion
tests are detailed in the physical residual capacity report
submitted by Dr. Kennedy. (Tr. 250-252). In recent years the
Plaintiff reported pain levels between seven and nine in his right
hip, knee and ankle to his treating physician in check-ups for
prescription renewal every three to four months. (Tr. 239-248). The
record also contains physicians notes about the Plaintiff's
increasing inability to sleep through the night due to pain,
complaints of the cold weather exacerbating the pain in his leg,
sharp pains when the Plaintiff moves wrong and a tendency to fall
if he stops wrong, none of which are mentioned by the ALJ.
(Tr. 239, 244). The Plaintiff's own testimony and the medical
reports suggest that Dr. Kennedy prescribed the use of an assistive
cane. (Tr. 159A, 361). Along with opiods, anti-inflammatories,
muscle relaxants and narcotic analegiscs for pain management,
Dr. Kennedy also prescribed medication for the treatment of asthma
and depression. See Tr. 144, 150, 153, 159A, 160, 231. Moreover,
there are signs that the doctor gave limited refills with notes to
have the Plaintiff check with him regularly. Id.

As another reason for not giving the treating physician's
opinion controlling weight, the ALJ "note[s] in passing that the
record contains frequent complaints of pain and specific requests

by the claimant for narcotic medications." (Tr. 19). The ALJ concluded, without support in the record, that claimant had <u>abused prescription medication</u> which was an issue which ". . . does not seem to have been raised in Dr. Kennedy's treatment records." (emphasis added) (Tr. 19.)  However, no where in the record is mention made of a possible narcotics addiction or abuse except for the ALJ's unsubstantiated conclusion which he based upon the treating physician's prescribing "narcotic medications . . . which Dr. Kennedy has been prescribing continuously for a significant number of years." (Tr. 19.)  The conclusion that the plaintiff was over-medicated and abused narcotics is an unwarranted assumption made by the ALJ and not supported by any treating source or medical consultant. <u>See</u> <u>Goldthrite v. Astrue</u>, 535 F.Supp.3d 329, 334 (W.D.N.Y. 1998) (citing <u>Powell v. Shalala</u>, 1993 U.S. Dist. LEXIS 17256, 1993 WL 500839 at 10 (D.Kan. 1993)("ALJ does not cite to any documents of record, and the court has not found any, which state that plaintiff is over-medicated[.]").

Furthermore, the ALJ makes note of a comment in Dr. Kennedy's treatment note for 7/10/06 about the physical exam being "normal," and follows it with a statement implying that the "severe limitations in all functions" appeared suddenly a few months later. (Tr. 20). However, the ALJ fails to consider the prior treating record and what could be considered "normal" for this patient, including reports of high levels of pain on a weekly basis, evidence of restriction of motion, and frequent waking during the

night due to pain. The ALJ does not note this prior history in the record, yet suggests that the Plaintiff was "normal" shortly before Dr. Kennedy's report. See Wagner, 906 F.2d 856, 862 ("throwaway language summarizing assumptions as to [claimant's] medical history counts for little in the face of a long history of documented infirmities").

As a final reason to discount the treating physician's report, the ALJ addressed the plaintiff's depression by stating that it was "alleged" in testimony, but that a treatment note on 7/10/06 indicated "depression reportedly OK." (Tr. 20). This characterization fails to take into account Dr. Kennedy's continuing concern with this issue and also fails to mention that in the same report, the doctor wrote "Depression reportedly OK – Stopped Smiling!!!" (Tr. 241).

Also, the ALJ notes an incomplete pulmonary function report in Dr. Kennedy's notes. However, the record shows that the pulmonary issue was conceded by both sides during the hearing as in remission so the lack of objective evidence regarding that issues is not highly relevant. (Tr. 338).

Moreover, the ALJ also did not credit objective "medical signs" of plaintiff's orthopedic problems in Dr. Kennedy's notes as well as elsewhere in the record. See 20 C.F.R. 404.1529(a)(2009). The x-ray results in Dr. Kennedy's reports from Orchard St. Community Health Center noted arthritic change in the lumbar region of the spine and right ankle. (Tr. 144). Dr. Kennedy's report noted

reduced joint motion as well as tenderness and pain. (Tr. 145). See Wagner, 906 F.2d at 861 (the ALJ is not authorized to discard a treating doctor's opinion on the basis of his opinion that there have been prior omissions in the record).

The underlying causes of Plaintiff's limitations are further supported by objective evidence (x-rays) in the record from examining physicians, Drs. Celestin and Medalle, which also offer evidence of previous injury to the right leg and show some abnormalities of his back. (Tr. 179, 207). The exam by Dr. Celestin showed that the petitioner has degenerative disc disease and back pain, arthritis and arthritic changes in right ankle, osteoporosis, and slight scoliosis of the lumbar spine (Tr. 175). Dr. Medalle diagnosed him with limitations of mobility in his right ankle, probable development of posttraumatic arthritis in right hip, atrophy of the right calf muscle and discogenic disorder of the lumbar spine. (Tr. 207). While all the examining physicians agree that the Plaintiff suffers from orthopedic problems they do not agree with he treating physician's assessment as to the extent of work related limitations. However, this circuit has noted that "[t]he reports of individual examinations are generally given less weight because they lack the 'unique perspective to the medical evidence' that a treating physician's opinion would provide." Goldthrite, 535 F.Supp.2d at 336 (citing Iannopolo v. Barnhart, 280 F.Supp.2d 41, 48 (W.D.N.Y. 2003)(citing 20 C.F.R. 404.1527(d)(2)). With regards to the objective evidence of his underlying

conditions, the record contains consistent evidence to support that the Plaintiff is orthopedically limited. The ALJ himself concluded that "the claimant's medically determinable impairments could reasonably be expected to produced the alleged symptoms." (Tr. 25).

In addition to mischaracterizing the treating physician's report in light of the record as a whole, the ALJ failed to apply the factors in determining what weight to be given the treating physician's opinion as to the Plaintiff's limitations and failed to explicitly state what weight was to be given the treating physician's report if it was not controlling.[5] Dr. Kennedy is the Plaintiff's only treating physician and his treating notes go back to 2002. Moreover although the medical records contain some gaps, in the twenty one months preceding Dr. Kennedy's residual functional capacity report, he saw the Plaintiff eight times, every three to six months. (Tr. 222-252). Dr. Kennedy prescribed prescription strength narcotics for chronic pain as well as anti-depressants and muscle relaxants and Viagra over the course of four years speaking to lengthy and comprehensive treating relationship. (Tr. 143-166, 222-252).[6]

---

[5] "In cases in which the Commissioner determines that a medical source opinion is not well-supported, the regulations require the ALJ to accord the physician's statements some extra weight based upon several factors. [**14] 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). n3 [*291] The factors cited in the regulations include the length of the treatment relationship, the nature and extent of the relationship, the supportability of the source's opinion, the consistency with other medical evidence in the record, whether the opinion involves the speciality of the physician, and any other factors that might be relevant. Id." Gilbert v. Apfel, 70 F. Supp. 2d 285, 290-291 (W.D.N.Y. 1999).

[6] The record does show gaps in treatment that are explainable due to the Plaintiff's times in the county jail. (Tr. 153).

Therefore, I find that the ALJ's assessment of the weight to be given to the treating physician's opinions is not supported by a reading of the record as a whole, nor is his finding that the treating physician's report was unsupported by objective evidence. See <u>Wagner</u>, 906 F.2d at 862 ("a circumstantial critique by non-physicians...must be overwhelmingly compelling in order to overcome a medical opinion.") The ALJ fails to provide "good reasons" or properly apply the necessary factors and therefore does not meet the requirements of SSR 96-2p with regards to the treating physician rule. <u>Schaal</u>, 134 F.3d at 503; <u>Burgess</u>, 537 F.3d at 129. Furthermore, I find that considering the longstanding relationship between Dr. Kennedy and the Plaintiff, as well as the objective evidence in the record, affording controlling weight to the opinions of one time examining physicians was error. <u>See</u> 20 C.F.R. 404.1527(d)(2). <u>Snell</u>, 177 F.3d 128 (2d Cir. 1999).

B.  **The ALJ's credibility finding is not supported by substantial evidence.**

Where the claimant's testimony concerning pain and functional limitations is not supported by objective evidence, the ALJ retains discretion in determining the plaintiff's credibility with regard to disabling pain and other limitations. <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir. 1979); <u>Snell</u>, 177 F.3d at 135. However, "a claimant's subjective evidence of pain is entitled to great weight where…it is supported by objective medical evidence." <u>Simmons v. U.S.R.R. Retirement Bd.</u>, 982 F.2d 49, 56 (2d Cir. 1992). If, as in

the present case, the Plaintiff's claims concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by the all of the clinical evidence, the ALJ must consider specific factors laid out in 20 C.F.R. §404.1529(c), including: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain; (3) any precipitating or aggravating factors; and (4) the type, dosage, effectiveness, and side effects of any medication taken by claimant to alleviate the pain. 20 C.F.R. § 404.1529(c)(3)(i)-(iv); 20 C.F.R. § 404.929(c)(3)(i)-(iv). After considering the plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject the claimant's subjective testimony. See Martone v. Apfel, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999); see also 20 C.F.R. §§404.1529(c)(4), 416.929(c)(4). However, in accepting or rejecting the complainant's testimony regarding pain, the ALJ is required to articulate the factors relied upon in reaching the judgment, explicitly and with specificity. See Melichaior v. Apfel, 15 F.Supp.2d 215, 219 N.D.N.Y. 1998) (quoting Brandon v. Bowen, 666 F.Supp. 604, 608 (S.D.N.Y. 1987) (citations omitted)).

Upon reviewing the ALJ's decision it is clear that he rejected the claimant's subjective testimony of pain and limitations because he did not find him credible. He also rejected the testimony of examiners who he felt relied on the claimant's testimony in their determinations of his limitations. (Tr. 27). However, it is unclear

what factors he ultimately relied upon to make this determination.[7] The ALJ makes broad statements that he has "considered all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence" based on the requirements in 20 CFR 416.929 and 416.927 and SSRs 96-2p, 96-4p, 96-5p, 96-7p and 06-3p. (Tr. 25). He then concludes that though "the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms…the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment for the reasons explained below." (Tr. 25). The "reasons explained below" base the determination solely on the ALJ's assessment of the credibility of the different medical examiners, accepting the residual functional capacity assessment of the examining physicians and rejecting the treating physician's assessment. Id. See Melichaior, 15 F.Supp.2d at 219 (internal citations omitted)(Court must be able to decide from ALJ's opinion "whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence.")

---

[7] "The court may not conduct a post-hoc rationalization of an ALJ's decision on the assumption that he followed the correct legal standards; he must explain his findings." Nix v. Astrue, 2009 U.S. Dist. LEXIS 98356 (W.D.N.Y. 2009)(citing Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004)(internal citations removed).

The ALJ concluded that the claimant's work history is "entirely inconsistent with the intellectual functioning he alleges," (Tr. 21), and that the plaintiff "tried to minimize all of [his prior] work" and misrepresent why he was fired (a fact for which there is no evidence in the record except for the Plaintiff's testimony and the ALJ's own observations). (Tr. 22). The ALJ also concluded that "while the claimant minimized his intellectual and physical functional ability, the landlady…testified that he performs some services for her such as minor repairs, putting up Christmas lights, taking out trash and mowing the lawn…and that he is independent in self care…and does odd jobs for others." Id.

However, this mischaracterizes the testimony of both the Plaintiff and Patricia Marland, the landlady. See Nix, 2009 U.S. Dist. LEXIS 98356 (W.D.N.Y. 2009)(citing Robinson, 366 F.3d at 1083(internal citations removed) ("an ALJ cannot pick and chose only parts of a medical opinion that support his determination" and may not engage in a "selective analysis of the record). While the Plaintiff testified that he lives on his own and helps his landlady with odd jobs, his testimony also speaks to the fact that he is limited in his daily activities. He requires handrails to navigate steps within his home. (Tr. 317). He also is limited to carrying five to six pounds, with the help of his cane so he asks the store to put very few items in a bag so that he can carry them a few at a time into the house. (Tr. 371-2). He cares for himself in his home by preparing frozen pizza, ramen noodles, and sandwiches

(Tr. 357, 360). Moreover, while he does perform minor repairs for his landlady, they both testified that he "sort of supervises," rather than actually performing extensive work. (Tr. 379, 82).

That his actions are limited by his chronic pain and fear of falling is substantiated by his testimony in the record. He requires a cane to ambulate, a fact that the ALJ fails to mention.[8] (Tr. 372). Patricia Marland, his landlady spoke to the pain she sees him suffer, observing that it is "apparent" on his face and that his face becomes drawn and he is short tempered and "winces and limps excessively" when he is in pain. (Tr. 323). The Plaintiff testifies, however, that he gets exercise by taking his dog for short walks so he won't deteriorate so quickly something that his treating physician recommended. (Tr. 352). As this Circuit has recognized, "[w]hen a disabled person gamely chooses to endure pain in order to pursue important goals, it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working. Nelson v. Bowen, 882 F.2d 45 (2d Cir. N.Y. 1989). The record does not support the conclusion that the Plaintiff's conduct rises to that level.

I find that the ALJ's credibility determination of plaintiff's testimony does not satisfy the requirements of SSR 96-7p.

**The ALJ fails to properly take into consideration Plaintiff's combination of impairments in the record as a whole.**

---

[8] In a treatment note by Dr. Kennedy dated 11/11/02, the doctor notes "chief complaint ankle pain – needs cane." (Tr. 159A).

While an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." McBrayer v. Secretary of Health and Human Servs., 712 F.2d 795, 799 (2d Cir. 1983) (internal quotation marks and citations omitted); see also Filocomo v. Chater, 944 F. Supp. 165, 170 (E.D.N.Y. 1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings."). Consulting psychologist Melvin Zax, Ph.D, administered a WAIS-III test that produced results of a full scale IQ score of 70, a verbal score of 73 and a performance score of 72. (Tr. 168-169). On the verbal sub-tests there was very little variability with four of his scores at the upper end of the retarded range and the other two borderline. Id. Also, as the ALJ noted, Dr. Zax "did not detect" any sign of psychiatric problems. (Tr. 20, 173).

It is important to note that once the Commissioner's own consultative psychological examiner testified that the Plaintiff was borderline retarded, the ALJ nonetheless rejected this testimony on the ground that it was inconsistent with the Plaintiff's testimony concerning his work history and level of daily activity and that there were no intervening events that caused the difference in cognitive ability. (Tr. 24). However, Dr. Zax also wrote that he believed that the Plaintiff's full-scale IQ was "an accurate reflection of his ability." (Ex. 3F and 4F). He

found that both the Plaintiff's recent and remote memory were impaired and estimated that "his fund of information is appropriate to his experience." Id. He concluded that "the examination results are only somewhat consistent with his allegations and based entirely on his limited intellectual capacity." Id. Dr. Zax reported that he did "not have much to recommend for the Plaintiff;" that "his problems are primarily physical" and that "while he is somewhat limited intellectually...[he] thinks that there would be jobs that he could do if he could handle them physically...but [] would guess that those are few and far between. Therefore [he thinks] that his prognosis is poor." (Tr. 169-170).

This evidence is further substantiated by the testimony of the Plaintiff and Patricia Marland as to the plaintiff's inability to read. (Tr. 350, 383). And by the Plaintiff's school records, which though almost illegible, do note that the Plaintiff had great difficultly in reading. (Tr. 137).

**D. The ALJ erred in finding that the Plaintiff could perform a range of sedentary work.**

Based on Peter Manzi, the vocational expert's ("VE") testimony, the ALJ concluded that the Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 27). Manzi testified that the Plaintiff's residual functional capacity would not allow him to do any of his previous work as described in the hearing. (Tr. 406). In response to a question, he testified that

19

the Plaintiff could not have performed semi-skilled or skilled work with borderline intellect as was opined to the court by Dr. Zax. (Tr. 407). Based on this testimony, the ALJ posed the following hypothetical to Manzi:

> "[A] person with, although only having a tenth grade education, presumably special, yet being able to perform past relevant work at the skill level of six and seven. But having all the physical impairments which reduced it to sedentary with environmental restrictions…alternating sitting and standing at will…"

Manzi opined that this hypothetical supported his conclusion that jobs existed in the national economy which plaintiff could perform: Information Clerk (128,000 nationally and 580 regionally) and Telemarketer (1,380 regionally). (Tr. 407-8). Manzi also testified that the Plaintiff could perform the job of Call Out Operator (12,500 jobs nationally and 62 locally) with a lesser intellect. (Tr. 407). The ALJ also notes from this opinion that the Plaintiff could perform the jobs of Ticket Seller or Parking Lot Attendant. (Tr.27).

The hypothetical questions presented to the VE rely on the VE's own assessment of the Plaintiff's testimony regarding his work experience fifteen years previous. (Tr. 26, 408). The ALJ in his decision states that "the vocational expert's testimony was based primarily on the claimant's own alleged limitations." (Tr. 26). It also relies on the ALJ's interpretation of Dr. Kennedy's residual functional capacity report that "sitting and standing less than six hours" meant that the Plaintiff could alternate sitting and

standing for up to eight hours. (Tr. 406). The law requires that "vocational testimony based on hypothetical questions that fail to 'relate with precision to the physical and mental impairments of the claimant is not substantial evidence on which an ALJ may base a decision. <u>Bradley v. Bowen</u>, 800 F.2d 760, 763 (8th Cir. 1986); <u>Mathew v. Barnhart</u>, 220 F.Supp.2d 171, 175 (W.D.N.Y. 2002).

The ALJ rejected the testimony of R. Yucinsky, MS, a certified rehabilitation counselor for Winship & Assoc. who evaluated the Plaintiff at the request of his representative because he felt that her conclusions were "predicated upon the claimant's self-report and presumed veracity, much of which has been demonstrated to be contradicted or of questionable credibility by they evidence of record and testimony cited herein which was not available to Ms. Yucinsky." (Tr. 27). However, Ms. Yucinsky based her opinion on Dr. Zax's report, the residual functional capacity report by Dr. Kennedy, the x-ray results from Kennmore/Buffalo and the Pulmonary Function Test results in Dr. Celestin's report, the report itself from Dr. Celestin, the school reports in the record, the social security records including Notice of decision dated January 24, 2007 and notice of Appeals Council Remanding Case to ALJ date June 28, 2007, additional academic testing, and two to three hours spent with the Plaintiff during which he related his medical and living situation. (Tr. 275-76, 280-81). Ms. Yucinsky's report concluded that given the Plaintiff's "age, employment history, educational deficits, residual functional capacity [as

reported by Dr. Kennedy as "part-time and less than full range of sedentary work"], and the results of intellectual testing as well as non-exertional impairments related to disrupted sleep, depression and environmental limitations as a result of asthma that Mr. Skillman is not capable of substantial gainful employment."

As the VE was not able to consider the Plaintiff's impairments with precision, due to the fact that the impairments were interpreted by the ALJ for the VE, I find that the VE's testimony that the Plaintiff could perform the jobs of Call Out Operator, Information Clerk and Telemarketer is not reliable evidence upon which an ALJ could make a finding of not disabled.[6] Thus, substantial evidence does not exist in the record to support the ALJ's conclusion of non-disability.

**CONCLUSION**

For the reasons set forth above, this court finds that the Commissioner's decision denying the Plaintiff disability benefits under SSI, was not supported by substantial evidence in the record. I find that the ALJ erred in failing to give controlling weight to the Plaintiff's treating physician's opinion as to the extent of his pain and limitations which were supported by substantial evidence in the record. The record contains substantial evidence of disability such that further evidentiary proceedings would serve no purpose. Accordingly, the defendant's motion for judgment on the pleadings is denied and the plaintiff's motion for judgment on the

---

[6] <u>Bradley</u>, 800 F.2d at 763; <u>Mathew</u>, 220 F.Supp.2d at 175.

pleadings is granted. The case is remanded to the Social Security Administration for calculation of benefits in accordance with this decision.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____
Michael A. Telesca
United States District Judge

DATED: June 18, 2010
Rochester, New York